JS 44 (Rev 06/17)

**CIVIL COVER SHEET**

5:18-CV-4985

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

K G , a minor

**(b)** County of Residence of First Listed Plaintiff    Lancaster County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher P. Lyden, Esquire
53 N Duke Street, Ste 205, Lancaster, PA 17602
717-393-8000

### DEFENDANTS
David T Stevenson, Tonya Evans, Mark Kerns, Drew Fredericks, Jasmine Torres, Jasmine Vargas, Lisa Rios, Ron Wilson, Tracy Kauffman, Aaron Wright, John Doe1 John Doe 3, Lancaster County

County of Residence of First Listed Defendant    Lancaster County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*
John P. Gonzales, Esquire - 2000 Market Street, Ste 2000, Phila , PA
David MacMain, Esquire - 433 W. Market Street, Ste 200, West Chester, PA

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☒ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U S Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42 U S C. 1983

Brief description of cause
Violation of Constitutional Right under 14th Amendment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F R Cv P

**DEMAND $**

CHECK YES only if demanded in complaint
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE ___Leeson___
DOCKET NUMBER 5:18-CV-00387

DATE
11/09/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG JUDGE

NOV 16 2018

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18   4985**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 53 N. Duke Street, Ste. 205, Lancaster, PA 17602

Address of Defendant: 235 Circle Avenue, Lancaster, PA 17602

Place of Accident, Incident or Transaction: LCYIC - 235 Circle Avenue, Lancaster, PA 17602

---

**RELATED CASE, IF ANY:**

Case Number   5:18-cv-00357        Judge   Leeson        Date Terminated

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not  related to any case now pending or within one year previously terminated action in this court except as noted above

DATE: 11/09/2018        Attorney-at-Law / Pro Se Plaintiff        82005
        Attorney I D # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

**A.**   *Federal Question Cases:*

☐ 1   Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2   FELA
☐ 3   Jones Act-Personal Injury
☐ 4   Antitrust
☐ 5   Patent
☐ 6   Labor-Management Relations
☑ 7   Civil Rights
☐ 8   Habeas Corpus
☐ 9   Securities Act(s) Cases
☐ 10  Social Security Review Cases
☐ 11  All other Federal Question Cases
       *(Please specify)*

**B.**   *Diversity Jurisdiction Cases:*

☐ 1   Insurance Contract and Other Contracts
☐ 2   Airplane Personal Injury
☐ 3   Assault, Defamation
☐ 4   Marine Personal Injury
☐ 5   Motor Vehicle Personal Injury
☐ 6   Other Personal Injury *(Please specify)*
☐ 7   Products Liability
☐ 8   Products Liability – Asbestos
☐ 9   All other Diversity Cases
       *(Please specify)*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, Christopher P. Lyden, Esquire , counsel of record *or pro se plaintiff*, do hereby certify

☑ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs

☐ Relief other than monetary damages is sought

DATE: 11/09/2018        Attorney-at-Law / Pro Se Plaintiff        82005
        Attorney I D # (if applicable)

NOTE  A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

NOV 16 2018

Civ 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA



### CASE MANAGEMENT TRACK DESIGNATION FORM

K.G., a minor
    *Plaintiff*

      VS.

DAVID T. STEVENSON, former staff worker
TONYA EVANS, staff supervisor
MARK KERN, staff supervisor
DREW FREDERICKS, director
JASMINE TORRES, staff worker
JASMINE VARGAS, staff worker
LISA RIOS, staff worker
RON WILSON, staff worker
TRACY KAUFFMAN, staff supervisor
AARON WRIGHT, staff worker
JOHN DOE 1, staff worker
JOHN DOE 3, staff worker
LANCASTER COUNTY
    *Defendants*

:
:
CIVIL ACTION

**18    4985**

No._ _ _ _ _ _ _

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security ·· Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration ·· Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos · Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management · Cases that do not fall into any one of the other tracks.     (X)

_11-9-18_ _ _ _ _ _ _      _____      PLAINTIFF_ _ _ _
Date                     Attorney-at-law             Attorney for
                                                                NOV 16 2018

  717-393-8000_ _ _ _ _         _717-393-8080_____     chris@millerlyden.com
Telephone                      FAX Number                   E-Mail Address

**MILLER LYDEN, P.C.**
CHRISTOPHER P. LYDEN, ESQUIRE
ATTORNEY ID NO. 82005
53 NORTH DUKE STREET, SUITE 205
LANCASTER, PENNSYLVANIA 17602
(717)-393-8000
chris@millerlyden.com

### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.G., a minor | : | |
| *Plaintiff* | : | |
| VS. | : | Case No. _____ |
| | | Jury Trial Demanded |
| DAVID T. STEVENSON, former staff worker | : | |
| TONYA EVANS, staff supervisor | : | |
| MARK KERN, staff supervisor | : | |
| DREW FREDERICKS, director | : | |
| JASMINE TORRES, staff worker | : | |
| JASMINE VARGAS, staff worker | : | |
| LISA RIOS, staff worker | : | |
| RON WILSON, staff worker | : | |
| TRACY KAUFFMAN, staff supervisor | : | |
| AARON WRIGHT, staff worker | : | |
| JOHN DOE 1, staff worker | : | |
| JOHN DOE 3, staff worker | : | |
| LANCASTER COUNTY | : | |
| *Defendants* | | |

## COMPLAINT

## PRELIMINARY STATEMENT

1.      K.G., now 18 years of age, was court-ordered to reside in the shelter care facility at the Lancaster County Youth Intervention Center (hereinafter "LCYIC") from approximately May of 2017 to July 2017.   She was a minor during this period of placement.  David T. Stevenson, a 54-year-old adult male, was a staff worker at the facility during this time.  About June of 2017, Stevenson began a pattern of sexually harassing behavior toward K.G.  Stevenson's inappropriate behavior escalated to outrageous criminal acts.  During this time, Stevenson entered K.G.'s room requesting to see her masturbate and he grabbed K.G.'s buttock in a sexual manner.

2.      K.G. brings this suit under 42 U.S.C. 1983 for a violation of her rights under the Fourteenth Amendment to the United States Constitution and Pennsylvania state law seeking compensatory damages, punitive damages, attorney fees, expert fees and costs.

## JURISDICTION

3.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. 1331 and pursuant to 28 U.S.C. 1343(a)(3) and (a)(4).  This Court has supplemental jurisdiction of Pennsylvania state law claims pursuant to 28 U.S.C. 1367.

## VENUE

4.      Venue in this Court is proper as to all Defendants pursuant to 28 U.S.C. 1391(a)(2) and (b)(2) because the events giving rise to the claims occurred in Lancaster County Pennsylvania, within this district.

## PARTIES

5.      Plaintiff, K.G., is a citizen of Pennsylvania currently residing at 539 East Strawberry Street, Lancaster, Pennsylvania.  At the time and events described herein, she was court-ordered to reside in the shelter area of the LCYIC.

6.      Defendant, former staff member David T. Stevenson, at the time of the events described herein, was employed by the LCYIC. At this time, he is incarcerated in the state correctional facility at Phoenix, located in Montgomery County, Pennsylvania. He is sued in his individual and official capacity.

7.      Defendant, Supervisor Tonya Evans, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602.  She is sued in her individual and official capacity.

8.      Defendant, Supervisor Mark Kern, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602.  He is sued in his individual and official capacity.

9.      Defendant, Director Drew Fredericks, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602.  He is sued in his individual and official capacity.

10.     Defendant, Jasmine Torres, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602.  She is sued in her individual and official capacity.

11.     Defendant, Jasmine Vargas, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602.  She is sued in her individual and official capacity.

12.      Defendant, Lisa Rios, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602. She is sued in her individual and official capacity.

13.      Defendant Tracy Kauffman, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602. She is sued in her individual and official capacity.

14.      Defendant Aaron Wright, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602. He is sued in his individual and official capacity.

15.      Defendant Ron Wilson, at the time of the events described herein, was employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602. He is sued in his individual and official capacity.

16.      Defendants, "John Doe 1 and "John Doe 3", at the time of the events described herein, were staff members employed by LCYIC, located at 235 Circle Avenue, Lancaster, Pennsylvania 17602. They are sued individually and in their official capacity.

17.      Defendant, Lancaster County, is a governmental unit responsible for housing juveniles placed as dependent child or awaiting court review. It is sued in its official capacity.

18.      At all relevant times, all Defendants acted under the color of state and/or local law, and within the scope of their employment.

**EXHAUSTION**

19.      K.G. has exhausted administrative remedies made available by the LCYIC and/or the government of Lancaster County. Enclosed please find letters sent to director of LCYIC Drew Fredericks and to the county solicitor of Lancaster County seeking administrative recourse.

## PREVIOUS LAWSUITS

20.    K.G. has never previously filed a lawsuit in state or federal court relating to the events described herein.

## STATEMENT OF FACTS

21.    K.G., a 16 year-old minor, was court-ordered to reside in the shelter care facility at the LCYIC from approximately February of 2017 to July 2017.

22.    David T. Stevenson, a 54-year-old adult male, was a staff worker at the shelter during this time.

23.    In June of 2017, Stevenson began a pattern of sexually harassing behavior toward K.G.

24.    He frequently stared at her and made overt sexual comments to her.  This would frequently occur when the two were alone in a common area of the facility.  He would touch and rub his groin as she passed by.  He frequently said to her that he was "going to eat that" while staring at her vaginal area.   Other times he was more specific and would say he wanted to "eat [her] pussy".  He told her he wanted to "take care of her".  He told her he wanted to have sexual intercourse with her.

25.    Stevenson told K.G. that he wanted her to masturbate when she lay in her bed at night. During nightly room checks he would come to her doorway and whisper to her "show me", while beckoning her to lift her sheets.

26.    On one occasion, K.G. was alone with Stevenson in the office located on the girls' side of the facility.  As she attempted to leave, Stevenson grabbed her buttocks from behind, holding it for several seconds.

27.    On August 11, 2017, Detective Aaron Harnish, a member of the Lancaster City Police Department, filed criminal charges on five separate dockets against Stevenson for indecent

assault – attempt (M-2), involuntary deviate sexual intercourse – criminal solicitation (F-1), institutional sexual assault (F-3), indecent assault (M-2), aggravated indecent assault (F-2), unlawful contact with a minor (F-3), and corruption of minors (F-3).

28.     Stevenson was accused of molesting several minor victims at the LCYIC.

29.     The shelter facility at the LCYIC purports to provide temporary and emergency care for alleged and adjudicated dependent and delinquent juveniles.

30.     The shelter facility serves males and females between ages ten and eighteen years of age that are awaiting court review.

31.     The shelter facility purports to provide accommodations to house twenty-four residents each with their own sleeping quarters.

32.     LCYIC claims that residents of the Shelter will participate in activities that help them grow emotionally, physically, and intellectually.

33.     The housing quarters of the shelter facility are divided for females and males.

34.     Staff members supervise residents.

35.     Supervisors manage staff members.

36.     Prior to Stevenson's harassment and assault of K.G., Stevenson committed multiple inappropriate acts against female residents.

37.     No less than four "unusual reports" were filed against Stevenson prior to his harassment and assault of K.G.

38.     The first incident "unusual report", made on August 17, 2016, involves a juvenile resident, C.C. C.C told staff worker Emily Rodriguez that Stevenson was making her feel uncomfortable. C.C. said Stevenson had been calling her "beautiful". C.C. said that she "has a

bad history with older men" and that she felt "weird" around Stevenson. Rodriguez reported the incident to Supervisor Tracy Kauffman and to Defendant Vargas.

39.     Subsequently, on August 18, 2016, Defendant Kauffman sent an email to Defendant Evans and Defendant Williams and Supervisor Scannapieco stating "we will monitor closely, and keep an eye on interactions."

40.     The second "unusual report", made on January 2, 2017, involves a juvenile resident, J.M. 2. J.M.2 told Defendant Rios, Defendant Torres and Defendant Evans that Stevenson approached her in the dining room when they were alone and stated "are you about that life." J.M. 2 asked "what life?" Stevenson stated, "are you about getting it in?" The incident was then reported to Defendant Kauffman. "Getting it in" is an idiomatic expression referring to sexual intercourse.

41.     The third "unusual report", made on January 2, 2017, involved a juvenile resident, L.O. L.O. reported to Defendant Torres that Stevenson had taken a picture of her in a black dress and had refused to return it. L.O.'s written report also indicates that she told Defendant Torres that Stevenson repeatedly asked her to "hit him up on the outs". L.O. understood Stevenson to mean that he wanted to get together with L.O. after she was released from the LCYIC for the purpose of having sexual relations. Supervisors Tonya Evans and Tracy Kauffman were informed of the incident.

42.     The fourth "unusual report", made on March 16, 2017, involved Defendant Torres and two other staff members observing Stevenson carry a juvenile resident from the couch to her room. Thereafter, Stevenson seen to remain alone in the room with her. Stevenson's hands were seen to be on the groin area of the juvenile. The incident was reported to Supervisor Kern who investigated the matter. Stevenson told Kern that he had "a great rapport" with the resident.

43.     Other acts of inappropriate behavior were reported to staff.

44.     In one incident, a female resident, who was pregnant, reported that Stevenson harassed her.  The incident occurred in the gym while Stevenson was shooting baskets.  As the female resident walked by, Stevenson offered her the basketball and stated, "if you make it, the baby's mine".  L.O., a female resident, heard about the incident from the female resident.  The female resident, specifically told L.O. that she filed a complaint against Stevenson with administrative members of the LCYIC.

45.     Another incident involved a female resident, first initial "A".  "A" was heard to address Stevenson as "Daddy".  "A" was found to have made a poster for Stevenson, which stated, "I love you Daddy".  L.O. heard Defendant Evans tell "A" that she had to stop calling Stevenson "Daddy".  L.O. heard Defendant Evans tell "A" not to make posters for Stevenson.

46.     In another incident, a female resident "N.G." was found to have made a nametag for Defendant Stevenson, labeled "Daddy".

47.     In another incident, a female resident, N.H., was found to have written love letters to Defendant Stevenson.  L.O. heard Defendant Evans tell N.H. to stop writing love notes to Defendant Stevenson.  After N.H. wrote the love letters to Defendant Stevenson, Defendant Stevenson flirted with N.H.  Defendant Stevenson addressed N.H. as "girlfriend" and told her she was "the prettiest on the unit".  L.O. heard Defendant Stevenson make these comments to N.H. in the presence of Defendant Torres and  Defendant Rios.

48.     In another incident, Defendant Stevenson approached Q.M. and K.G.  Defendant Stevenson said to K.G. that he wanted to "give her backshots" and said he wanted to "fuck [her] from behind".  Defendant Stevenson grabbed himself in the groin area and became sexually aroused.  Q.M. immediately approached a female staff worker, Defendant John Doe 1, and

reported what Stevenson said and did. Q.M. told John Doe 1 that Defendant Stevenson often got sexually aroused while speaking with them. Staff worker John Doe 1 laughed upon hearing that Defendant Stevenson got an erection after speaking with Q.M. and K.G.

49.     In another incident, Q.M. was participating in a writing assignment. Defendant Stevenson approached her while she was working on her assignment. Defendant Stevenson asked Q.M. if she was writing about "doing it" with him. Defendant Ron Wilson, a staff worker, heard Defendant's Stevenson comments. Defendant Wilson immediately approached Q.M. and told her to notify him if Defendant Stevenson did anything inappropriate to her.

50.     Around August of 2016, J.M. 3 reported to Defendant Evans and to a staff worker that Stevenson was "trying to touch the girls".

51.     Thereafter, between September of 2016 and November of 2016, on two separate occasions, Stevenson sexually assaulted juvenile resident J.M. 3 by digitally penetrating her vagina. J.M. 3 reported the first incident of digital penetration to a female staff worker, "John Doe 3". John Doe 3 responded to the accusation by laughing. J.M. 3 also reported the first incident to Defendant Evans.

52.     Between March of 2017 and June of 2017, J.M. 1 told Defendant Wright that she was having Stevenson message her boyfriend on her behalf using her Facebook account. J.M. 1 told Defendant Wright that she had to "do things" for Stevenson to have him deliver the messages, and Stevenson would refuse to deliver the messages unless she "did the things" he asked. J.M. 1 became very upset while explaining this to Defendant Wright.

53.     Between March 2017 and June of 2017, J.M. 2 told Defendant Wright that when she had been last released from the LCYIC she met with Stevenson at Dominion's Pizza. J.M 2 told

Defendant Wright she took $200.00 from Stevenson.  J.M. 2 told Defendant Wright that

Stevenson expected sexual favors in return for the money.

54.     Defendant Evans did not allow Defendant Stevenson on the girls' side of the shelter

during her shifts.   Defendant Evans either was enforcing a prohibition enacted by Director

Fredericks and/or administrative members of LCYIC or Defendant Evans decided to act

unilaterally because she herself had concerns about Defendant Stevenson.  In any case, L.O. and

the Plaintiff witnessed Defendant Evans kick Defendant Stevenson off of the girls' side of the

shelter on two separate occasions between May of 2017 and June of 2017.

55.     Supervisor/Defendant Mark Kern, however, allowed Defendant Stevenson to roam freely

on the girls' side of the shelter, although it was against the policy that required Defendant

Stevenson to remain off of the girls' side of the shelter and/or although Defendant Stevenson had

no legitimate work-related reason for being there.  Defendant Stevenson told L.O. that Defendant

Evans prevented him from being on the girls' side, but further specifically stated that he could

come to the girls' side during Defendant Kern's shifts.  Defendant Stevenson told L.O. that

Defendant Kern would allow him to do "anything he wanted".  L.O. saw Defendant Stevenson

on the girls' side of the shelter during Defendant Kern's shifts.  Q.M. and J.M. saw Defendant

Stevenson on the girls' side of the shelter during Defendant Kern's shifts.

56.     Staff members also saw Defendant Stevenson on the girls' side of the shelter at a time

when Stevenson was not permitted to be there and/or had no work-related reason for being there.

In May of 2017 and June of 2017, at times when Defendant Stevenson was prohibited from

being on the girls' side of the shelter and/or had no work-related reason for being there, L.O.,

Q.M., and J.M. saw the following staff members being present when Stevenson was present on

the girls' side of the shelter:  Defendant Torres, Staff Defendant Vargas, and Defendant Rios.

All events described above occurred prior to Defendant's Stevenson's assaults on K.G.

57.     Q.M. heard Defendant Torres tell Defendant Rios and Defendant Vargas the Stevenson

"needs to be on the boys' side" because "he is hitting on the girls with his eyes."

58.     All events described above occurred prior to the harassment and assault of K.G.

## CAUSES OF ACTION

### First Claim for Relief

### 42 U.S.C. 1983 against Defendant Stevenson

59.     Defendant Stevenson engaged in an outrageous invasion of K.G.'s bodily integrity and

security that shocks the conscience in violation of her rights under the Fourteenth Amendment of

the United States Constitution, and 42 U.S.C. 1983.

60.     Defendant Stevenson misused and abused the official power granted to him by the state

in the performance of his official duties thereby causing the harm to K.G.

61.     Defendant Stevenson engaged in conduct with reckless indifference to the constitutional

and statutory rights of K.G.

### Second Claim for Relief

### 42 U.S.C. 1983 against Defendant Evans

62.     Defendant Evans acted with deliberate indifference to K.G.'s personal safety and bodily

security and failed to protect her from a substantial risk of harm, in violation of her rights under

the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

63.     Prior to the sexual assaults upon K.G., J.M. 3 told Defendant Evans that Stevenson

digitally penetrated her vagina.

64.     As a supervisor of the facility, Defendant Evans was aware of all the information noted above, including information that was disclosed in the "unusual reports" filed against Stevenson.

65.     Defendant Evans was so concerned about the risk the Stevenson presented to female residents that she would not allow Stevenson on the girls' side during her shifts.

66.     Defendant Evans, nevertheless, failed to take actions to protect K.G. – she failed to properly supervise Stevenson and/or failed to report Stevenson's sexual assault of J.M. 3 to supervisors and/or administrative members.

67.     Defendant Evans failed to report to supervisors and/or administrators that Stevenson repeatedly tried to gain access to the girls' side of the facility when he had no work-related reason for being there.

68.     Alternatively, Defendant Evans failed to report that Stevenson attempted to circumvent a policy specifically prohibiting him from being on the girls' side of the facility.

69.     Defendant Evans failed to take actions necessary to have Stevenson dismissed from his employment.

70.     The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

### Third Claim of Relief

### 42 U.S.C. 1983 against Defendant Kern

71.     Defendant Kern acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

72.     As a supervisor, Defendant Kern was aware of all the information indicated above, including information disclosed in unusual reports filed against Stevenson.

73.    Defendant Kern, nevertheless, failed to take actions to protect K.G. – he failed to properly supervise Stevenson and/or failed to report Stevenson's inappropriate behavior to supervisors and/or administrative members.

74.    More specifically, during his shifts, Defendant Kern permitted Stevenson to be present on the girls' side of the facility when Stevenson had no work-related reason for being there.

75.    Defendant Kern permitted this although he knew that Defendant Evans would not allow Stevenson to be there and/or he knew that administrators had ordered Stevenson barred from the girls' side of the facility.

76.    Defendant Kern failed to take actions necessary to have Stevenson dismissed from his employment.

77.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

### Fourth Claim for Relief

### 42 U.S.C. 1983 against Defendant Kauffman

78.    Defendant Kauffman acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

79.    As a supervisor, Defendant Kauffman was aware of all the information indicated above, including information disclosed in unusual reports filed against Stevenson.

80.    The unusual report involving juvenile resident C.C. was filed in August of 2016.

81.    Defendant Kauffman was informed of the report and participated in the questioning of Stevenson.

82.     Defendant Kauffman emailed supervisors and/or administrative members of the LCYIC that Stevenson would be monitored closely thereafter.

83.     The unusual report concerning Stevenson's sexual harassment of J.M. 2 in the dining hall was filed on January 2, 2017.

84.     The unusual report concerning Stevenson's sexual harassment of L.O. involving her picture and Stevenson asking her to get to together when she was released, was filed on January 2, 2017.

85.     Defendant Kauffman was informed of both reports and participated in the questioning of Stevenson after each event.

86.     Defendant Kauffman filed reports, however, in both cases, she failed to forward the reports to administrative members of the LCYIC and failed to notify administrative members of the LCYIC by any means.

87.     Rather, Defendant Kauffman simply placed the reports in Stevenson's file, and, as a result, no action by administration was taken against Stevenson.

88.     Defendant Kauffman failed to take actions reasonably necessary to have Stevenson dismissed from his employment.

89.     The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

**Fifth Claim for Relief**

**42 U.S.C. 1983 against Defendant Fredericks**

90.     Defendant Fredericks acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

91.     More specifically, Defendant Fredericks, as the director supervising the girls' side of the facility, was aware of Stevenson's inappropriate behavior as reported in four unusual reports.

92.     Defendant Fredericks was informed of all the incidents noted in paragraphs 38-53 above.

93.     Defendant Fredericks, nevertheless, failed to take actions to protect K.G. – he took no action and failed to terminate Stevenson's employment and/or he enacted a policy of prohibiting Stevenson from being present on the girls' side without properly supervising compliance with his policy and/or the policy did not reasonably protect K.G. from sexual harassment and sexual assault.

94.     Also, Defendant Fredericks was aware or should have been aware that the Shelter was not properly staffed leaving periods of time overnight without proper supervision.

95.     The failure to properly staff the Shelter was a substantial factor contributing to the violation of K.G.'s constitutional rights.

96.     The failure to require staff to report all accusations of sexual assault to supervisors or administrators was a substantial factor contributing to the violation of K.G.'s constitutional rights

97.     The failure to terminate Stevenson's employment was a substantial factor contributing to the violation of K.G.'s constitutional rights.

98.     The failure to properly supervise compliance of a policy that required Stevenson to not be present on the girls' side of the facility was a substantial factor contributing to the violation of K.G.'s constitutional rights.

99.     The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

**Sixth Claim for Relief**

**42 U.S.C. 1983 against John Doe 1**

100.    Defendant John Doe 1 acted with deliberate indifference to K.G.'s personal safety and

bodily security and failed to protect her from a substantial risk of harm, in violation of her rights

under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

101.    Defendant Stevenson approached Q.M. and another female resident K.G.  Defendant

Stevenson said to K.G. that he wanted to "give her backshots" and said he wanted to "fuck [her]

from behind".   Defendant Stevenson grabbed himself in the groin area and became sexually

aroused.   Q.M. and K.G. immediately approached John Doe 1 and reported what Stevenson said

and did.  Q.M. and K.G. told John Doe 1 that Defendant Stevenson often got sexually aroused

while speaking with them.  Staff worker John Doe 1 laughed upon hearing that Defendant

Stevenson got an erection after speaking with Q.M. and K.G.

102.    Subsequent to this incident, K.G. was sexually harassed and sexually assaulted by

Stevenson.

103.    John Doe 1 failed to protect K.G. by taking no action upon being informed of the

information indicated in paragraph 101.

104.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that

it violated contemporary standards of decency.

**Seventh Claim for Relief**

**Sexual Assault, Battery by Defendant Stevenson**

105.    Defendant Stevenson, acting within the scope of his agency, assaulted and battered K.G.

by placing his hands on her buttocks in a sexual manner.

106.    As a direct and proximate result of Defendant Stevenson's actions, K.G. suffered severe mental and emotional distress, physical pain, fear and embarrassment.   K.G. continues to suffer severe mental distress from the actions of Defendant Stevenson.

107.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

### Eighth Claim for Relief

### 42 U.S.C. 1983 against Lancaster County

108.    Defendant Lancaster County acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

109.    Lancaster County is responsible for the administration of the LCYIC.

110.    Administrative members of the LCYIC were aware of Stevenson's inappropriate behavior as described in paragraphs 38-53 above.

111.    Nevertheless, the LCYIC, failed to take actions to protect K.G. – it took no action and/or failed to terminate Stevenson's employment and/or enacted a deficient policy of merely prohibiting Stevenson from being present on the girls' side.

112.    Alternatively, in the event of not being aware of Stevenson's behavior as described in paragraphs 38-53 above, the LCYIC adopted a deficient policy of not requiring staff and/or supervisors to report incidents of sexual harassment or sexual assault.

113.    Alternatively, the LCYIC adopted a deficient policy of allowing an employee to continue to have access to juvenile residents after the reporting of multiple incidences of sexual harassment or sexual assault.

114.    Also, the LCYIC was aware or should have been aware that the Shelter was not properly staffed leaving periods of time overnight without proper supervision.

115.    The failure to properly staff the Shelter was a substantial factor contributing to the violation of K.G.'s constitutional rights.

116.    The failure to enact a policy that would prevent Stevenson from having unsupervised access to juvenile residents after it had been reported that he was engaging in sexual harassment and/or sexual assault was a substantial factor contributing to the violation of K.G.'s constitutional rights.

117.    The failure to enact a policy that required that Stevenson's employment be terminated after multiple accusations of sexual harassment and sexual assault was a substantial factor contributing to the violation of K.G.'s constitutional rights.

118.    The failure to properly supervise compliance of a policy that required Stevenson to not be present on the girls' side of the facility was a substantial factor contributing to the violation of K.G.'s constitutional rights.

119.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

### Ninth Claim for Relief

### 42 U.S.C. 1983 against Ron Wilson

120.    Defendant Ron Wilson acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1983.

121.    More specifically, prior to the sexual assaults, Defendant Wilson heard Stevenson ask K.G., during a classroom writing assignment, ask if she was writing about "doing it" with him.

122.   Defendant Wilson failed to take action necessary to protect K.G. from sexual assault.

123.   Defendant Wilson did not report the incident to anyone and, as a result, Stevenson continued to be employed by the LCYIC.

124.   The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

### Tenth Claim for Relief

### 42 U.S.C. 1983 against Jasmine Torres

125.   Defendant Torres acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

126.   More specifically, prior to the sexual assaults, Defendant Torres was aware of Stevenson's inappropriate behavior described in paragraphs 35-53 above

127.   Defendant Torres saw Defendant Stevenson on the girls' side of the facility when he was prohibited from being there and/or had no work-related reason for being there, as described in paragraph 56 above.

128.   Defendant Torres, nevertheless, failed to take actions to protect K.G. – she failed to report Stevenson's inappropriate behavior to supervisors and/or administrative members.

129.   Defendant Torres failed to take actions necessary to have Stevenson dismissed from his employment.

130.   The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

**Eleventh Claim for Relief**

**42 U.S.C. 1983 against Jasmine Vargas**

131.    Defendant Vargas acted with deliberate indifference to K.G.'s personal safety and bodily

security and failed to protect her from a substantial risk of harm, in violation of her rights under

Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

132.    More specifically, prior to the sexual assaults, Defendant Vargas was aware of

Stevenson's inappropriate behavior described in paragraphs 35-53 above

133.    Defendant Vargas saw Defendant Stevenson on the girls' side of the facility when he was

prohibited from being there and/or had no work-related reason for being there, as described in

paragraph 56 above.

134.    Defendant Vargas, nevertheless, failed to take actions to protect K.G. – she failed to

report Stevenson's inappropriate behavior to supervisors and/or administrative members.

135.    Defendant Vargas failed to take actions necessary to have Stevenson dismissed from his

employment.

136.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that

it violated contemporary standards of decency.

**Twelfth Claim for Relief**

**42 U.S.C. 1983 against John Doe 3**

137.    Defendant John Doe 3 acted with deliberate indifference to K.G.'s personal safety and

bodily security and failed to protect her from a substantial risk of harm, in violation of her rights

under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

138.    Between May of 2016 and November of 2016, on two separate occasions, Stevenson

sexually assaulted juvenile resident J.M. 3 by digitally penetrating the vagina.  J.M. 3 reported

the first incident to a female staff worker, "John Doe 3". John Doe 3 responded to the accusation by laughing. J.M. 3 also reported the first incident to Defendant Evans.

139.   Subsequent to this incident, Stevenson repeatedly sexually assaulted Q.M.

140.   John Doe 3 failed to protect K.G. by taking no action upon being informed of the information indicated in paragraph 132.

141.   The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency.

## Thirtieth Claim for Relief

## 42 U.S.C. against Defendant Rios

142.   Defendant Rios acted with deliberate indifference to K.G.'s personal safety and bodily security and failed to protect her from a substantial risk of harm, in violation of her rights under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983.

143.   More specifically, prior to the sexual assaults, Defendant Rios was aware of Stevenson's inappropriate behavior described in paragraphs 35-53 above.

144.   Defendant Rios saw Defendant Stevenson on the girls' side of the facility when he was prohibited from being there and/or had no work-related reason for being there, as described in paragraph 56 above.

145.   Defendant Rios, nevertheless, failed to take actions to protect K.G. – she failed to report Stevenson's inappropriate behavior to supervisors and/or administrative members.

146.   Also, Defendant Rios failed to report that Stevenson was present on the girls' side of the facility at a time when had no work-related reason for being there and knowing of the inappropriate acts he committed as described in paragraphs 49-68 above.

147.    Or, Defendant Rios failed to report that Stevenson was present on the girls' side of the facility when he had no work-related reason for being there and knowing that Stevenson was specifically ordered to be on present on the girls' side of the facility.

148.    Defendant Rios failed to take actions necessary to have Stevenson dismissed from his employment.

149.    The deprivations of K.G.'s rights described herein constitute a risk of harm so grave that violated contemporary standards of decency.

## INJURIES SUSTAINED BY K.G.

150.    K.G. suffered sexual harassment, sexual assault and battery as a direct and proximate result of the Defendants' actions described above.

151.    As a result, K.G. suffered physical pain.

152.    As a result, K.G. suffered and continues to suffer extreme emotional pain and distress.

153.    As a result, K.G. suffered and continues to suffer extreme embarrassment, humiliation and mental anguish.

## RELIEF REQUESTED

154.    Plaintiff seeks compensatory damages against each Defendant, jointly and severally.

155.    Plaintiff seeks punitive damages against Defendant Stevenson, Defendant Kern, Defendant Evans, Defendant Vargas, Defendant Torres, Defendant Rios, Defendant Kauffman, Defendant Fredericks, Defendant Wilson, Defendant Wright, Defendant John Doe 1, and Defendant John Doe 3.

156.    Plaintiff seeks reasonable attorney fees and costs pursuant to 42 U.S.C. 1988(a).

157.    Plaintiff seeks reimbursement for expert fees pursuant to 42 U.S.C. 1988(b).

158.    Plaintiff seeks other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

159.    The Plaintiff requests a trial by jury on all issues that may be presented to a jury for

resolution.

                              K.G., a minor, PLAINTIFF
                              BY:


                              _____
                              Christopher P. Lyden, Esquire
                              Attorney Id. No. 82005
                              53 North Duke Street, Suite 205
                              Lancaster, PA  17602
                              717-393-8000